UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS REDDICK,<br><br>                                    Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, et al.,<br><br>                                    Defendant. | Case No.:  3:15-cv-02326-L-WVG<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS [Docs. 40, 47] TO AUGMENT THE ADMINISTRATIVE RECORD AND (2) SETTING TRIAL DATES** |

Pending before the Court is Plaintiff Thomas Reddick's ("Reddick") motions to augment the administrative record. The Court decides the matter on the papers submitted and without oral argument. See Civ. L. R. 7.1 (d)(1). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Reddick's motions.

//
//
//
//
//
//
//

I.      **BACKGROUND**

This case concerns the termination of Plaintiff Reddick's long term disability benefits. Reddick previously worked as a financial advisor for Morgan Stanley, a mostly sedentary job that requires long hours of sitting and mental concentration. In March 2008, Reddick injured himself when he slipped and fell while performing yard work at his home. As a result, Reddick underwent procedures including spinal surgery, epidural steroid injections, and was placed on various medications that may affect his cognitive abilities. Prior to sustaining this injury, Reddick enrolled in a long-term disability insurance plan provided by his employer Morgan Stanley. Defendant Metropolitan Life Insurance Company ("MetLife") is both the insurer and administrator of this plan ("the Plan"). Under the Plan, an insured is considered "disabled" (and therefore entitled to benefits) if "due to Sickness or as a direct result of accidental injury: [the insured is] receiving Appropriate Care and Treatment and complying with the requirements of such treatment; [the insured is]: unable to earn more than 80% of [his] Predisability Earnings at [his] Own Occupation from any employer in [his] Local Economy; and unable to perform each of the material duties of [his] Own Occupation." (AR 1947.)

Because of his injury, Reddick started drawing benefits on his MetLife policy in 2010. He continued to draw benefits through November 21, 2014, when MetLife terminated his benefits. Prior to benefit termination, MetLife faxed a form ("the Form" [Doc. 40-8 Ex. 1 p. 5]) to Dr. Mark A. Harris ("Dr. Harris"), one of Reddick's treating physicians. The Form asked Dr. Harris "[d]o you agree that [Reddick] has the functional ability to return to work with or without accommodations [yes or no]." Before faxing it back, Dr. Harris circled "yes" and "with" and wrote in "I believe RTW [return to work] is an essential part of spine rehab although in this case likely with accommodations."

MetLife notified Reddick of his benefit termination via letter. (Termination Letter [AR 336–338].) In the Termination Letter, MetLife informed Reddick of his right to appeal within 180 days and explained that he should submit evidence to support his appeal. The Termination Letter did not notify Reddick of the Form filled out by Dr.

Harris, nor did MetLife otherwise inform Reddick of the Form's existence prior to his administrative appeal.

MetLife denied Reddick's administrative appeal. (Appeal Denial [AR 11–17].) In doing so, MetLife relied on a variety of medical and administrative opinions. (Id.) Of special relevance to the present motions, MetLife relied on an administrative law judge's ("ALJ") determination that Reddick was not sufficiently disabled to qualify for social security disability benefits. (See [Doc. 42] 5:2–5.) This decision was vacated on an appeal heard by Judge Moskowitz.

MetLife also relied on the opinion of an independent physician consultant ("IPC"). In his report, the IPC concluded Reddick could lift up to 20lbs; sit for 8 hours in an 8-hour work day provided he could change positions every 30 minutes; walk and stand; bend, stoop, and twist occasionally; and reach overhead, waist level, and below the waist without any restrictions. (AR 218.) Before stating this conclusion, the IPC's report referenced the ALJ's vacated decision, stating "on December 27, 2013, an administrative law judge denied disability and noted [Reddick] could lift and carry 10 pounds frequently. The administrative law judge noted he could lift 20 pounds occasionally, stand and walk for four out of eight hours a day, and sit for six out of eight hours a day." (AR 216–17.) The IPC further stated that his conclusions were "based on [Reddick's] history of chronic pain syndrome and previous surgery … [as well as] the note from Dr. Harris of June 5, 2014 [the Form], noting that return to work is an essential part of spine rehabilitation." (AR 219.)

Reddick subsequently appealed the denial of his disability benefits to this Court. (See Compl. [Doc. 1].) Reddick now seeks to augment the administrative record with three items. The first item is a letter from Dr. Harris. (The Letter [Doc. 40–8 Ex. 1 pp. 2–4].) In the Letter, Dr. Harris provides an in depth explanation of Mr. Reddick's physical condition, an opinion on Reddick's disability status, and an explanation of what he meant to communicate when he filled out the Form. (Id.) The second item is an exhibit containing W2's and earnings statements which Reddick claims are relevant to

1 determining his disability pay.  (Earnings Records [Doc. 40–6 Ex. 4].)  The third is a
2 summary judgment order in which Judge Moskowitz vacated the ALJ's opinion and
3 remanded the case.  (MSJ Order [Doc. 47–5 Ex. 1].)  MetLife opposes the admission of
4 all of these exhibits.  (See Opp'ns [Docs. 42, 48].)

## II.  LEGAL STANDARD

Consistent with governing law[1], the parties have stipulated that the proper standard of review for this ERISA governed improper denial of benefits claim is *de novo*.  (See Joint Stipulation [Doc. 31]; May 24, 2016 Order [Doc. 41].)  Under this standard, the Court's duty is to determine whether a denial of ERISA governed benefits was proper. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006).  In making this determination, a Court should generally consider only materials that were a part of the administrative record considered by the plan administrator.  *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 943–44 (9th Cir. 1995). However, a district court, in its discretion, may consider evidence extrinsic to the administrative record when necessary to conduct an adequate *de novo* review.  *Id.*  A non-exhaustive list of circumstances in which extrinsic evidence can thus be "necessary" include those involving (1) potential conflicts of interest presented where the administrator is the payor and (2) relevant evidence that a claimant could not have presented during the administrative review process.  *Opeta v. Northwest Airlines Pension Plan for Contract Emps*, 484 F.3d 1211, 1217 (9th Cir. 2007) (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993).

//
//
//

---

[1] *See Opeta v. Northwest Airlines Pension Plan for Contract Emps*, 484 F.3d 1211, 1216 (9th Cir. 2007).

### III. DR. HARRIS' LETTER

Reddick seeks to admit a letter from Dr. Harris in which Dr. Harris explains what he meant when he filled out the Form stating that Reddick could return to work with accommodation and that a return to work was essential to spine rehab. (The Letter.) Because the Letter was not part of the administrative record, admission is proper only if necessary to conduct an adequate de novo review. *Mongeluzo*, 46 F.3d at 943–44. Broadly speaking, Reddick argues the Letter is necessary because (1) MetLife based their denial of benefits decision, at least in part, on the Form; (2) the Form is ambiguous; and (3) The Letter shows that Metlife resolved the ambiguity in a manner that is inconsistent with the actual opinion Dr. Harris intended to communicate when he filled out the Form.

In support of this argument, Reddick cites to *Williams v. Sun Life Assurance Co. of Canada*, 2009 WL 604942 (C.D. Cal. 2009). In *Williams*, ERISA claimant Williams appealed the denial of her benefits. In denying Williams' administrative appeal, Defendant Sun Live, the insurer and claims administrator, relied on the opinion of a doctor who reviewed Williams' medical records and prepared a report essentially stating that she was not medically disabled from returning to her work. In reaching this conclusion, the reviewing doctor relied on a form that Sun Live created and sent to Williams' attending physician. The form listed three categories of activity: stand / walk, sit, and drive. Next to each activity were boxes for the attending physician to check off, indicating how much, if any, of the activity she believed Williams could undertake in a given day. Williams' attending physician checked "1-4 hours" for stand/walk, "1-3 hours" for sit, and "1-3 hours" for drive. In so doing, the attending physician meant to communicate her opinion that Williams could intermittently sit for a total of 1-3 hours in a day, whether driving or doing something else while seated. However, the reviewing doctor hired by Sun Live added the maximum number under sit with the maximum number under drive and concluded that Williams could sit for six hours in a given day and therefore was not disabled from performing her work.

In appealing the denial of her claim to the district court, Williams sought to augment the administrative record with a declaration from her attending physician explaining that Sun Live interpreted the form her attending physician filled out in a manner inconsistent with the information her attending physician intended to communicate. The court granted Williams' motion to augment, emphasizing that (1) the form was ambiguous; (2) Sun Live created the ambiguity in drafting the form; (3) Sun Live, as both insurer and claims administrator, resolved the ambiguity in a manner that financially benefitted it but harmed Williams. Plaintiff urges that, because this case is on all fours with *Williams,* the Court should reach the same conclusion here.

The Court agrees. Like in *Williams*, the Form at issue here is ambiguous. In very broad fashion, it asks: "Do you agree that Mr. Reddick has the functional ability to return to work with or without accommodation? [yes or no?]." (the Form.) The Form provides absolutely no information as to what type of work Reddick can do or how many hours in a week he could do it. Further, by indicating Dr. Harris' belief that a return to work would be helpful to an ongoing spine rehabilitation process and would likely require accommodations, the Form does not seem to imply a belief that Reddick was physically able to make a near complete return to work. Metlife could have easily cleared up this ambiguity by following up with Dr. Harris.[2] But, Metlife did not.

Also like in *Williams*, there is a risk of conflict of interest presented by the fact that MetLife operates as both insurer and administrator. This concern is magnified by the fact that MetLife, instead of following up with Dr. Harris, seemingly resolved the ambiguity in a financially self-serving manner detrimental to the interests of the insured. Further, Metlife did not notify Reddick of the Form when they invited him to present information relevant to his administrative appeal of the initial denial of his benefits, thus denying him

---

[2] The Court notes that MetLife complains of difficulty experienced in communicating with Dr. Harris. However, the facts show that MetLife learned that sending a fax was the most efficient method of communicating with Dr. Harris and they successfully contacted Dr. Harris with the first fax they sent him. There is no reason to believe a second fax would have gone unreturned.

the opportunity to come forward with this clarifying evidence earlier. Such circumstances clearly favor augmentation of the administrative record. *See Opeta,* 484 F.3d at 1217 (internal quotations omitted).

MetLife presents several arguments in opposition. First, Metlife argues that the Letter is not necessary because, apart from the Form, the voluminous Administrative Record contains more than enough other information upon which to sustain MetLife's decision to terminate benefits. The problem with this argument is that, regardless of how many other records or evidence may tend to support MetLife's determination, the fact remains that MetLife appears to have placed special emphasis on the Form Dr. Harris filled out.

Specifically, in its letter to Reddick notifying him of the denial of his appeal, MetLife repeatedly references a report prepared by an Independent Physician Consultant ("IPC"). (AR 13–17.) In his report, the IPC concluded Reddick could lift up to 20lbs; sit for 8 hours in an 8 hour work day provided he could change positions every 30 minutes; walk and stand; bend, stoop, and twist occasionally; and reach overhead, reach waist level, and reach below the waist without any restrictions. (AR 218.) The IPC further stated that this conclusion was "based on [Reddick's] history of chronic pain syndrome and previous surgery … [as well as] the note from Dr. Harris of June 5, 2014 [the Form], noting that return to work is an essential part of spine rehabilitation." (AR 219.)

Thus, the IPC's conclusions, which seem to have heavily informed MetLife's denial decision, appear to stem in large part from the Form prepared by Dr. Harris. Because that form was ambiguous, the IPC's reliance upon it, as well as MetLife's denial citing the IPC report, seem potentially problematic. Furthermore, (1) admission of the letter would provide no further information than would have likely been gleaned from MetLife properly following up with Dr. Harris to resolve the ambiguity of the Form, and, (2) because Dr. Harris is an attending physician, his opinions would seem highly relevant to a determination of whether Reddick was disabled per the policy definition. Therefore,

to properly scrutinize MetLife's decision *de novo*, the Court finds it necessary to exercise its discretion to admit the Letter clarifying the ambiguity of the Form. Accordingly, the Court **GRANTS** Reddick's motion as to Dr. Harris' Letter.

## IV. REDDICK'S EARNINGS RECORDS

Reddick also seeks to augment the administrative record with various earnings records [Doc. 40–6, Ex. 4] that he claims demonstrate MetLife improperly calculated the amount of benefits owed to him under the policy. Though not briefed as such, the Court sees two issues presented by this request: (1) the admissibility of earnings statements to show the inadequacy of any pre-termination benefits payments and (2) admissibility for purposes of calculating damages stemming from post-termination non-payment of benefits, assuming liability is found. As to the first issue, the Court **DENIES** Reddick's motion. Reddick never raised the issue of improper benefits calculation in the administrative context with MetLife and therefore has not yet exhausted his administrative remedies regarding pre-termination benefits payments. *See Saffle v. Sierra Pacific Power Co. Bargaining Unit for Long Term Disability Income Plan.*, 85 F.3d 455, 460 (9th Cir. 1996).

As to the second issue, the Court **GRANTS** Plaintiff's motion. If the Court finds that MetLife's denial of benefits was improper and the issue of damages need not be remanded, Reddick's earnings records would be necessary.

## V. SUMMARY JUDGMENT ORDER

Reddick also seeks to admit a summary judgment order issued by Judge Moskowitz. In February 2011, Reddick applied for social security disability benefits. The ALJ who heard his claim concluded Reddick was not disabled per social security standards. The ALJ's decision is a part of the administrative record and MetLife placed some reliance upon it in concluding that Reddick was not disabled per the Plan's standards. (See [Doc. 42] 5:2–5 (MetLife stating it relied in part on the ALJ's findings);

AR 215–6 (IPC indicating he reviewed the ALJ's findings in preparing his report).) Reddick appealed the ALJ's decision to the district court. In a summary judgment order issued after the ERISA administrative record closed, Judge Moskowitz vacated the ALJ's decision and remanded the case for proper consideration. Specifically, Judge Moskowitz found two faults with the ALJ's decision. First, the ALJ violated the treating physician rule by rejecting the opinion of a treating physician in favor of a non-treating physician's contradicting opinion without providing specific and legitimate reasons, supported by substantial evidence in the record, for doing so. Second, the ALJ erred by not including in the hypothetical posed to the vocational expert the ALJ's finding that Reddick suffered from mild mental impairment as a result of the medications he takes.

The main argument that MetLife presents in opposition to the admission of this order is that it is not relevant (or necessary) because it relies entirely on a principle that has no application to ERISA appeals: the treating physician rule. The main problem with this argument is that it ignores a substantial portion of the MSJ Order. As explained above, Judge Moskowitz found that the ALJ erred both by (1) violating the treating physician rule and (2) by not properly taking account of Reddick's mild mental restrictions. The ALJ's failure to consider Reddick's mild mental restrictions certainly would tend to suggest that the ALJ might have erred in concluding Reddick was not disabled per social security standards. In turn, this would tend to suggest that MetLife, in determining that Reddick was not disabled per Plan standards, erred in placing reliance on the ALJ's potentially flawed conclusion.

Furthermore, as it stands, the administrative record contains the ALJ's finding that Reddick is not disabled per social security standards. MetLife has already cited to the ALJ's finding to support its conclusion that Reddick was not disabled per Plan standards. (See [Doc. 42] 5:2–5.) If the Court does not admit the MSJ Order, MetLife, at trial, could again cite to the ALJ's opinion to support its benefits denial decision and Reddick would be unable to counter with the fact that Judge Moskowitz found the ALJ's opinion to be

1  flawed.  To avoid such unfairness, the Court finds it necessary to have the MSJ on file.
2  Accordingly, the Court **GRANTS** Reddick's motion as to it.
3  //
4  //
5  //
6  //
7  //
8  //
9  //
10 //
11 //
12 //
13 //
14 //
15 //
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

10

3:15-cv-02326-L-WVG

## VI. CONCLUSION AND ORDER

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Reddick's motions as follows.

- The Administrative Record is augmented with the following:
    - Dr. Harris' Letter [Doc. 40-8 Ex. 1 pp. 2–4].
    - Reddick's W2's and earnings statements [Doc. 40–6 Ex. 4] for the sole purpose of determining damages, if any, stemming from post-termination non-payment of benefits.
    - Judge Moskowitz's order granting summary judgment, vacating the ALJ's decision, and remanding the case [Doc. 47–5 Ex. 1], as well as the associated Judgment [Doc. 47–5 Ex. 2].

It is further ordered that:
- On or before **April 24, 2017**, the parties shall file their respective opening trial briefs.
- On or before **May 12, 2017**, the parties shall file their respective responding trial briefs.
- Trial is scheduled before the undersigned on **June 6, 2017, at 9:00 a.m.**
- On or before **June 13, 2017**, the parties shall file proposed findings of fact and conclusions of law.
- The parties shall not file a brief in excess of 25 pages.
- A post trial settlement conference before a magistrate judge may be held within 30 days of verdict in the case.

**IT IS SO ORDERED.**

Dated: March 23, 2017

_____
Hon. M. James Lorenz
United States District Judge