# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS REDDICK,<br><br>               Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>               Defendant. | Case No.: 3:15-cv-02326-L-WVG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S ATTORNEYS' MOTION [Doc. 56] FOR ATTORNEYS' FEES AND COSTS** |

    Pending before the Court is Plaintiff Thomas Reddick's Attorneys' (hereafter "Counsel") motion for attorneys' fees and costs. Pursuant to Civil Local Rule 7.1(d)(1), the Court decides the matter on the papers submitted and without oral argument. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Counsel's motion.

//
//
//
//
//
//

## I. BACKGROUND

This case concerns the termination of Plaintiff Reddick's long term disability benefits. Reddick previously worked as a financial advisor for Morgan Stanley, a mostly sedentary job that required long hours of sitting and mental concentration. In March 2008, Reddick injured himself when he slipped and fell while performing yard work at his home. As a result, Reddick underwent procedures including spinal surgery, epidural steroid injections, and was placed on various medications that may affect his cognitive abilities. Prior to sustaining this injury, Reddick enrolled in a long-term disability insurance plan provided by his employer Morgan Stanley. Defendant Metropolitan Life Insurance Company ("MetLife") is both the insurer and administrator of this plan ("the Plan"). Under the Plan, an insured is considered "disabled" (and therefore entitled to benefits) if "due to Sickness or as a direct result of accidental injury: [the insured is] receiving Appropriate Care and Treatment and complying with the requirements of such treatment; [the insured is]: unable to earn more than 80% of [his] Predisability Earnings at [his] Own Occupation from any employer in [his] Local Economy; and unable to perform each of the material duties of [his] Own Occupation." (AR 1947.)

Because of his injury, Reddick started drawing benefits on his MetLife policy in 2010. He continued to draw benefits through November 21, 2014, when MetLife terminated his benefits. Prior to benefit termination, MetLife faxed a form ("the Form" [Doc. 40-8 Ex. 1 p. 5]) to Dr. Mark A. Harris ("Dr. Harris"), one of Reddick's treating physicians. The Form asked Dr. Harris "[d]o you agree that [Reddick] has the functional ability to return to work with or without accommodations [yes or no]." Before faxing it back, Dr. Harris circled "yes" and "with" and wrote in "I believe RTW [return to work] is an essential part of spine rehab although in this case likely with accommodations."

MetLife notified Reddick of his benefit termination via letter. (Termination Letter [AR 336–338].) In the Termination Letter, MetLife informed Reddick of his right to appeal within 180 days and explained that he should submit evidence to support his appeal. The Termination Letter did not notify Reddick of the Form filled out by Dr.

Harris, nor did MetLife otherwise inform Reddick of the Form's existence prior to his administrative appeal.

MetLife denied Reddick's administrative appeal. (Appeal Denial [AR 11–17].) In doing so, MetLife relied on a variety of medical and administrative opinions, including an administrative law judge's ("ALJ") determination that Reddick was not sufficiently disabled to qualify for social security disability benefits. (See [Doc. 42] 5:2–5.) This decision was vacated on an appeal heard by the Honorable Barry Ted Moskowitz.

MetLife also relied on the opinion of an independent physician consultant ("IPC"). In his report, the IPC concluded Reddick could lift up to 20lbs; sit for 8 hours in an 8-hour work day provided he could change positions every 30 minutes; walk and stand; bend, stoop, and twist occasionally; and reach overhead, waist level, and below the waist without any restrictions. (AR 218.) Before stating this conclusion, the IPC's report referenced the ALJ's vacated decision, stating "on December 27, 2013, an administrative law judge denied disability and noted [Reddick] could lift and carry 10 pounds frequently. The administrative law judge noted he could lift 20 pounds occasionally, stand and walk for four out of eight hours a day, and sit for six out of eight hours a day." (AR 216–17.) The IPC further stated that his conclusions were "based on [Reddick's] history of chronic pain syndrome and previous surgery … [as well as] the note from Dr. Harris of June 5, 2014 [the Form], noting that return to work is an essential part of spine rehabilitation." (AR 219.)

Prior to trial, Reddick brought two motions to augment the administrative record with various items. One item was a letter in which Dr. Harris provides an in depth explanation of Mr. Reddick's physical condition, an opinion on Reddick's disability status, and an explanation of what Dr. Harris meant to communicate when he filled out the Form. (Id.) The second item was an exhibit containing W2's and earnings statements which Reddick claimed were relevant to determining his disability pay. (Earnings Records [Doc. 40–6 Ex. 4].) The third was a summary judgment order in which Judge Moskowitz vacated the ALJ's opinion and remanded the case. (MSJ Order [Doc. 47–5

Ex. 1].) MetLife opposed the admission of all of these exhibits. The Court granted both of Plaintiff's motions to augment the administrative record. (March 23, 2017 Order [Doc. 53].) Very shortly thereafter the parties agreed to settle the case under the following terms: (1) reinstatement of Plaintiff's benefits; (2) back pay; and (3) reasonable attorney fees to be negotiated between the parties. (Joint Motion to Vacate Trial [Doc. 54].) Because the parties were unable to agree on reasonable attorney fees, Counsel brought the instant motion. Defendant opposes. (Opp'n [Doc. 57].)

## II. DISCUSSION

Defendant does not dispute the fact that, in light of Plaintiff's success in this litigation, the Court may award reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1). Rather, the dispute focuses solely on what amount of compensation is reasonable. In ERISA cases the first step in determining reasonable attorneys' fees is calculation of a lodestar by multiplying the hours worked by a reasonable hourly rate. *Welch v. MetLife*, 480 F.3d 942, 945 (9th Cir. 2007). "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed." *Id.* (*Citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Generally, the court should defer to the winning lawyer's professional judgment as to how much time the case required. *Costa v. Comm'r of Social Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[A]fter all he [or she] won, and might not have, had he [or she] been more of a slacker.").

Counsel has submitted a 29 page Fee Chart showing that they spent 492.4 hours working on this case. (Fee Chart [Doc. 56-4 Ex. 5].) These hours were spent on tasks such as fact investigation, legal research, reviewing the voluminous administrative record, communicating with Plaintiff and his physicians, obtaining and reviewing documents such as Social Security records, medical records, earnings records, and insurance policy documents. Plaintiff's Counsel also drafted a detailed thirty seven page

complaint; briefed two contested motions to augment the administrative record; prepared for and attended a discovery conference; engaged in settlement negotiation, and briefed the instant motion. (McMillen Decl. ¶ 9.) In addition to the fee chart, Plaintiff's Counsel has also submitted a declaration from Glenn Kantor, an experienced ERISA litigator, attesting that the amount of time Plaintiff's Counsel spent to successfully prosecute this case is reasonable and commensurate with other similar ERISA cases. (Kantor Decl. [Doc. 56-7] ¶ 13.)

Defendant contends that 492 hours was an excessive amount of time to spend on this case. In support of this contention, Defendant offers six specific criticisms of Counsel's billing.[1] First, Defendant argues that it was excessive to spend 40.5 hours preparing a detailed 37 page complaint. Defendant argues this was excessive because such a high level of detail and specificity is not required by the Federal Rules of Civil Procedure. While it is true that a less detailed complaint may have survived a motion to dismiss, it does not follow that it is a waste of time to prepare a detailed complaint. Because a detailed complaint can effectively signal the strength of a case and the diligence of a plaintiff's counsel, the Court finds it was not unreasonable for Counsel to spend 40.5 hours to draft the 85 paragraphs at issue here.

Second, Defendant contends it was unreasonable to bill 71.1 hours after Defendant notified Plaintiff of its intention to reinstate his benefits. Defendant's argument consists only of Defendant's opinion that it "excessive, unnecessary, and unreasonable" to bill this time because reinstatement of benefits mooted the case. This argument is unpersuasive. It ignores the facts that Counsel spent 43.6[2] of these 71.1

---

[1] Defendant also makes a number of broad arguments to the effect that Plaintiff billed excessive time on this case because it did not actually go to trial and only two motions were contested. These arguments are not persuasive because they fail to engage Plaintiff's detailed fee chart in a way that identifies how it is allegedly inflated. Put differently, the proper focus of the present motion is the hours of work that Counsel actually performed, not the amount of work that Counsel did not have to perform.

[2] Defendant complains it was unreasonable to bill 43.6 hours to prepare the instant fee motion. This argument rests entirely on the contention that briefing on the issue of whether Counsel was entitled to

hours preparing the instant motion and the remaining 27.5 hours are easily accounted for through Counsel's efforts in calculating damages, preparing a settlement demand, engaging in settlement negotiations, and repeated efforts at securing the benefit payments Defendant agreed to provide. (McMillen Supp. Decl. [Doc. ¶ 3.) Accordingly, the Court finds reasonable the 71.1 hours billed after notification of Defendant's intention to reinstate benefits.

Third, Defendant complains that it was unreasonable for counsel to spend 167 hours on the two successful motions to augment the administrative record. Defendant's argument rests on a mischaracterization of these motions as being simple procedural motions of little consequence. Plaintiff's motions to augment were pivotal in that they set the evidentiary playing field in a posture that convinced Defendant to settle the case by agreeing to provide Plaintiff all the relief he sought. It was not unreasonable to spend 167 hours carefully drafting (successful) motions of such consequence.

Fourth, Defendant complains of the 83.5 hours Counsel spent reviewing the administrative record and the 28.5 hours spent preparing a casemap for trial. In support of this argument, Defendant offers only its opinion that such billing was "patently excessive and unreasonable." The Court disagrees. The administrative record in this case is 2,534 pages in length and successful prosecution of this case required that Counsel review it more than just once. Further, even assuming only one review, the math amounts to less than two minutes spent reviewing one page and much of the billing for review of the record was at the lower rate billed by junior associates. The 23.5 hours of case mapping was also billed by junior attorneys, amounting to only $7,801. The Court finds such billing reasonable.

---

fees was unnecessary because the parties had already stipulated that Defendant owed counsel reasonable fees. The Court disagrees that the parties' stipulation rendered this briefing unnecessary. It serves the foundational purpose of providing the Court with a full explanation of the legal basis underpinning Counsel's entitlement to the requested relief, which is a proper function of any motion.

Fifth, Defendant argues that, in light of the experience of Counsel, it was unreasonable to spend 32.3 hours performing legal research that involved reviewing cases. Defendant's argument again consists only of presenting its opinion that such billing was excessive. The Court is unpersuaded by Defendant's opinion. Suffice it to say that failing to review relevant case law can amount to malpractice, and 32.3 hours of legal research is by no means remarkable for a contested ERISA claim.

Finally, Defendant argues that it was overkill to staff this case with four lawyers given that Defendant only used one attorney. This argument is also unpersuasive. From the fact that the losing side used only one attorney, it does not follow that it was excessive for the winning side to have used more than one attorney. Furthermore, by using four attorneys (two senior, two junior) it seems that Counsel was actually able to lessen fees by delegating some of the less challenging work to the less expensive attorneys.

Having considered Defendant's arguments to the contrary and having reviewed Counsel's fee chart, the declaration of Mr. Kantor, and considering the quality of the work produced by Counsel and the successful result obtained, the Court finds reasonable the 515.1 hours Counsel spent on this case.[3] The next step in the lodestar calculation is to determine reasonable hourly rates to assign to these hours.

Counsel seeks compensation at the following rates: $650 per hour for all work performed by Mr. McKennon prior to 2016 and $700 per hour for all work performed by Mr. McKennon thereafter; $550 per hour for all work performed by Mr. McMillen prior to 2016 and $600 per hour for all work performed by Mr. McMillen thereafter; $290 per hour for all work performed by junior attorneys. There appears to be no dispute regarding the $290 per hour fee for junior attorneys, which the Court finds reasonable. Rather, Defendant's opposition focuses on the hourly rates of Mr. McKennon and Mr.

---

[3] 492.4 hours + 22.7 hours spent drafting the reply brief.

McMillen, which Defendant proposes should be set, respectively, at $600 per hour and $500 per hour.

Determination of a reasonable hourly rate requires consideration of market rates for attorneys with "the experience, skill, and reputation of the attorney requesting fees." *Welch*, 480 F.3d at 946. Counsel has submitted persuasive evidence showing that the market supports their requested hourly rates. Mr. McKennon, a partner at his firm, has practiced law for 31 years and spent the majority of his career prosecuting and Defending bad faith insurance claims, including hundreds of ERISA governed claims. (McKennon Decl.) Mr. McMillen has practiced law for 21 years and has more than 14 years of experience litigating insurance coverage cases, including ERISA claims. Counsel has also submitted declaration testimony from Glenn Kantor, a respected ERISA litigator with over 31 years of experience. Kantor testifies that in 2015 his firm charged $650 per hour for partners and $500 per hour for senior associates. (Kantor Decl. ¶ 6.) Kantor further testifies that (1) clients have paid $700 per hour on a non-contingent fee basis for work performed by partners at his firm and (2) he believes that the hourly rates requested by Counsel here are reasonable and supported by the market. (Id. ¶ 8.) Counsel also presents evidence showing that in March 2016 and later in June 2016 insurers paid Counsel the presently requested rates to settle the attorneys' fee component of two successful ERISA claims. (McKennon Decl. ¶¶23, 24.)

Defendant's opposition argues that the requested fees are unreasonable because Counsel has provided no evidence that hourly clients pay them these rates. Defendant also appears to argue that the settlement of attorneys' fees claims has no relevance as to going market rates because parties do not consider the issue of a prevailing party's reasonable attorneys' fees when negotiating settlement amounts. Neither argument is persuasive.

The first argument is problematic in that the Ninth Circuit has explicitly held that an attorney need not show paying clients have paid them the sought hourly rate. *Welch*, 480 F.3d at 946. Rather, the test is whether the evidence shows that hourly paying clients

will pay the sought rate for representation of comparable quality. *Id.* Here, Counsel has submitted evidence showing that hourly paying clients will in pay the sought rates for comparable representation. (Kantor Decl. ¶ 8.) Defendant's argument that reasonable attorneys' fees are or no relevance to the global settlements of ERISA claims is plainly untrue. To the extent a prevailing plaintiff's attorneys demand excessive fees, the cost to settle a case increases and settlement therefore becomes less desirable for a defendant. Thus, the fact that defendants have paid Counsel the sought hourly rates tends to suggest that these rates are reasonable.

Having considered Counsel's declarations, the declaration of Glenn Kantor, the attorneys' fees Counsel has received through settlement, and considering (1) the high quality of the work produced by Counsel, (2) the successful result they obtained for their client, and (3) the risks presented by the contingent nature of this case, the Court finds the requested hourly rates to be reasonable. The resulting lodestar figure is $293,115.

Defendant argues that the Court should apply a downward multiplier to the lodestar to reflect the fact that this case settled before trial. "In rare and exceptional cases, [a] district court may adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the initial lodestar calculation." *Welch*, 480 F.3d at 946. Defendant's argument improperly conflates the concept of success on the merits (whether through trial or by way of dispositive motion) with success in using the litigation process to achieve a plaintiff's prayed for relief. Here, Counsel obtained 100% of the relief Plaintiff sought by way of a settlement agreement reached after extensive pretrial posturing. None of the cases Defendant's cite in their opposition suggest that lodestar reduction is proper in this context. Indeed, to reduce the lodestar because counsel did not need to proceed to trial to achieve the client's goals would create waste by discouraging parties from striking mutually beneficial pretrial settlement agreements. Accordingly, the Court **GRANTS** Counsel's motion as to fees in the amount of $293,115.

Additionally, Counsel seeks $3,651.11 in costs. A prevailing ERISA Plaintiff is entitled to the categories of costs enumerated under 28 U.S.C. § 1920 as well as

reasonable out of pocket litigation expenses that lawyers in the community typically bill to clients separately from their hourly rates. *Trs of Const. Indus. & Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006). The $3,651.11 in costs that Counsel seeks to recover stems from the filing fee, travel expenses, service / messenger fees, legal research service charges, and various monthly office fees for "telephone, facsimile transmission, in house document scanning, photocopying, and normal non-overnight postage." (McKennon Decl. ¶ 30; Cost Chart [Doc. 56-4 Ex. 6].) Defendant does not appear to dispute Counsel's entitlement to recover its costs for filing, travel, service / messenger fees, and legal research service charges. Further, Counsel's testimony that it is customary in this region for attorneys to charge such fees to paying clients separate from the hourly bill is consistent with the Court's experience. (McKennon Decl. ¶ 30.) Having carefully reviewed the itemization of these costs in the Cost Chart submitted by Plaintiff, the Court finds them reasonable.

Defendant does oppose Counsel's prayer for recovery of monthly office fees. Defendant argues that monthly office fees constitute recurring overhead costs that lawyers in this region do not customarily bill to their clients. The only itemization Counsel provides for these charges is line item entries describing them as "monthly fee[s] for telephone, facsimile transmission, in house document scanning, photocopying, and normal non-overnight postage." Further, Counsel billed these monthly costs at the same rate during the entire course of litigation, regardless of whether Counsel was actively litigating this case during the specific months billed. Given the vague description of these fees as monthly and the indiscriminate billing of them (at the exact same amount) regardless of litigation activity during a given month, the Court finds Counsel has failed to carry its burden of showing that it is customary for attorneys to bill these recurring overhead fees to clients. Accordingly, the Court will lessen Counsel's cost award by $2,375. Defendant shall pay Counsel $1,276.11 for costs.

//

//

### III. CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Counsel's motion for attorneys' fees and costs as follows:

- Defendant shall pay Counsel $293,115 for attorneys' fees.
- Defendant shall pay Counsel $1,276.11 for costs.

**IT IS SO ORDERED.**

Dated: January 31, 2018

_____
Hon. M. James Lorenz
United States District Judge